UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RODRIGUEZ O'DONNELL GONZALEZ &
WILLIAMS, P.C. f/k/a RODRIGUEZ
O'DONNELL ROSS,

       Plaintiff,

    v.

YUSEN LOGISTICS (AMERICAS) INC. f/k/a
YUSEN AIR & SEA SERVICE (U.S.A.) INC.,

       Defendant.

and

YUSEN LOGISTICS (AMERICAS) INC. f/k/a
YUSEN AIR & SEA SERVICE (U.S.A.) INC.,

       Counter-Plaintiff,

    v.

RODRIGUEZ O'DONNELL GONZALEZ &
WILLIAMS, P.C. f/k/a RODRIGUEZ
O'DONNELL ROSS; THOMAS J. O'DONNELL;
R. KEVIN WILLIAMS; CARLOS RODRIGUEZ;
and HENRY GONZALEZ,

       Counter-Defendants.

No. 15 CV 3030

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

In 2007, Yusen Logistics (Americas) Inc., a transportation-services company, had the law firm of Rodriguez O'Donnell Ross on retainer to address customs issues as they arose. Thomas O'Donnell, an attorney at the firm, met with some of Yusen's representatives in July 2007 to discuss a pending class-action lawsuit concerning

antitrust violations in the air-cargo shipping industry. O'Donnell knew that Yusen was a member of the putative class, and suggested to Yusen's representatives that the Rodriguez firm represent Yusen in the antitrust litigation. Yusen agreed, and executed on November 3, 2007, an engagement letter to that effect. Yusen committed to paying the firm 25% of any monies recovered by Yusen in the suit. Yusen ultimately paid the firm over $478,000 in fees from several settlements. Before an additional settlement was distributed, however, Yusen terminated its relationship with the Rodriguez firm (with respect to the antitrust case). The firm sued Yusen for quantum meruit, and Yusen filed a counterclaim for fraud and fiduciary breach against the firm and its shareholders. Counter-defendants move to dismiss the claims against them. For the reasons discussed below, the motion is granted in part and denied in part.

## I.     Legal Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." In general, the complaint (or, here, counterclaim) need not include specific facts, but it must provide the defendant with fair notice of what the claim is, and the grounds upon which it rests. *Olson v. Champaign Cnty., Ill.*, 784 F.3d 1093, 1098–99 (7th Cir. 2015) (citing *Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The pleading must present enough factual matter, accepted as true, that the claim to relief "is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*,

550 U.S. at 570). Where the claim to relief sounds in fraud, however, it must be pleaded with particularity, Fed. R. Civ. P. 9(b), including the "who, what, when, where, and how" of the fraud, *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 950 (7th Cir. 2013) (citation omitted). In considering a motion to dismiss under Rule 12(b)(6), a district court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *Id.* at 946 (7th Cir. 2013) (quoting *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010)).

## II. Facts

Yusen Logistics is a logistics and transportation-services firm. [7] ¶ 1.[1] In 2007, Yusen had on retainer the law firm of Rodriguez O'Donnell Ross (later Rodriguez O'Donnell Gonzalez & Williams, P.C.) to address customs issues on an as-needed basis. *See id.* ¶¶ 3, 7, 11. The firm had been performing similar legal services, addressing tariff classifications, free-trade agreements, etc., for more than ten years. *See id.* ¶ 9. In July 2007, an attorney at the firm named Thomas O'Donnell spoke with one of Yusen's customs supervisors about the firm representing Yusen in a federal class-action suit in the Eastern District of New York. *See id.* ¶¶ 3, 12, 14. The litigation concerned alleged antitrust violations in the air-cargo shipping industry. *See id.* ¶ 12. O'Donnell knew that Yusen, as a frequent purchaser of air-freight shipping services, was a member of the putative

---

[1] Citations to the record are designated by the document number as reflected on the district court's docket, enclosed in brackets; referenced page numbers are from the CM/ECF header placed at the top of filings. Unless otherwise indicated, citations to document [7] are to Yusen's counterclaim. Citations to the portion of this document comprising plaintiff's complaint (or Yusen's answers thereto) are designated as [7-C].

class in the antitrust action, and told the customs supervisor that Yusen should participate in the suit. O'Donnell also suggested that Yusen hire the Rodriguez law firm to represent the company's interests in the litigation. *See id.* ¶¶ 13–14.

O'Donnell continued to talk to Yusen about the antitrust action over the next several months, and in October 2007, O'Donnell met with the customs supervisor, and one of Yusen's customs brokers, to further discuss the issue. *See id.* ¶¶ 11, 14–16. At the meeting, O'Donnell again offered to represent Yusen in the class-action suit, and proposed a contingent-fee arrangement whereby the law firm would be awarded 25% of any monies recovered by Yusen in the antitrust litigation. *See id.* ¶ 16. (Yusen claims that the proposal was a departure from the company's past dealings with the firm, as the firm usually billed at an hourly rate or sought a fixed retainer fee for its services. *See id.*) On October 26, another attorney at the firm (Henry Gonzalez) filed an appearance in the antitrust case on Yusen's behalf. *See id.* ¶ 18.

A week later, on November 2, 2007, O'Donnell sent a formal engagement letter to Yusen. *See id.* ¶ 19. The letter stated:

> This [letter] is further to the meeting . . . regarding the [antitrust litigation]. We wish to thank you for selecting our firm to provide legal services in connection with the potential recovery of damages from various airlines because of anticompetitive activities which may be in violation of U.S. laws. Our firm's policy requires that we send you a formal engagement letter to cover the services that you have asked us to provide. This letter constitutes our contract covering the performance of those legal services as hereafter described and the charges for those services.
>
> 1.  <u>Scope of Engagement.</u>   You   are   requesting   Rodriguez O'Donnell Ross to assist your company in obtaining the maximum

possible monetary recovery for damages incurred because of the anticompetitive activities of various airlines in fixing prices for certain fuel surcharges, security charges, U.S. Customs surcharges, and war risk surcharges. This includes filing appearances in the courts having jurisdiction of this matter, handling discovery and objections thereto, filing and responding to motions, filing pleadings, and all other matters necessary to achieve the highest monetary recovery for Yusen Air & Sea Services. . . .

We will provide those legal services reasonably required to represent you for the task outlined above. . . . Unless we make a different written agreement, this agreement governs all services we perform for you. . . .

4.    Legal Fees.  Our legal fees will be contingent upon the recovery in this case, and shall be 25% of all monies Yusen actually recovers in this action. If no monies are recovered, then there will be no charge for our services.

5.    Costs. In addition to our contingent fees, we incur expenses for costs we customarily advance on our client's behalf, such as . . . out of town travel . . . . [O]ccasional travel to the courts having jurisdiction of this matter will be necessary for the purpose of arguing motions, advising the Courts of status and answering questions, etc. These may be billed separately or together with invoices for legal services rendered, and must be reimbursed promptly.

November 2, 2007 Letter from Thomas J. O'Donnell to Mark Hogan, [1-1] at 17–18 (referenced in Yusen's counterclaim at [7] ¶ 19).[2] Yusen executed the agreement on November 3, 2007. [1-1] at 18; [7] ¶ 20. O'Donnell did not advise Yusen to seek independent legal review of the proposed contingent-fee agreement, and Yusen agreed to the representation without seeking any such review. *See* [7] ¶ 21.

On October 29, 2013, and again on April 10, 2014, the Rodriguez firm sent invoices to Yusen, each seeking payment of 25% of settlements recovered by Yusen in the antitrust action. *See id.* ¶ 33. Yusen paid the firm $478,783.90 in response to

---

[2] In resolving a motion to dismiss, the district court may consider documents that are critical to the complaint and referenced in it. *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n. 1 (7th Cir. 2012) (citations omitted).

these demands. *See id.* ¶ 34. Yusen received notice in September 2014 of an additional settlement (the fourth thus far), which was anticipated to exceed $362 million in funds for the class. *See* [7-C] ¶ 30. In October 2014, before any funds from the new settlement were distributed, Yusen contacted the Rodriguez firm and demanded that, moving forward, the firm bill only on an hourly basis. *See id.* ¶ 29.[3] The firm would not agree to hourly billing, and Yusen terminated the attorney-client relationship with respect to the antitrust case. *See id.* ¶¶ 35–38.

The Rodriguez firm sued Yusen in March 2015 in Illinois state court, bringing claims under Illinois law for quantum meruit, unjust enrichment, and promissory estoppel. [1-1]. Yusen removed the case to federal court on the basis of diversity jurisdiction[4], [1], and filed counterclaims for fraud (Count I) and breach of fiduciary duty (Counts II and III) against the firm and its individual shareholders (O'Donnell, Gonzalez, Carolos Rodriguez, and Kevin Williams), [7] ¶¶ 36–58. Counter-defendants filed a motion to dismiss Yusen's claims, arguing that none of them states a proper claim to relief. [11].

---

[3] Yusen disputes this allegation, though it admits that it contacted O'Donnell on October 3, 2014, to offer to compensate him and any of his colleagues at their regular hourly rates. *See* [7-C] ¶ 29.

[4] Yusen is a New York corporation with its principal place of business in New Jersey, *see* [7] ¶ 1, and thus is a citizen of both states, *see* 28 U.S.C. § 1332(c)(1). The Rodriguez firm and its principals Thomas O'Donnell and Kevin Williams are Illinois citizens. *Id.* ¶¶ 2–4. Principals Carlos Rodriguez and Henry Gonzales are citizens of Maryland and the District of Columbia, respectively. *Id.* ¶¶ 5–6.

## III.    Analysis

### A.    Fraud (Count I)

Yusen's fraud claim is presented in two parts. The first is based on representations that the Rodriguez firm made in the November 2007 engagement letter; the second is based on facts that Yusen says the law firm concealed from the company.

### 1.    *Fraudulent Misrepresentation*

To state a claim for fraudulent misrepresentation in Illinois, the plaintiff must allege: (1) a false statement of material fact; (2) that the party making the statement knew of its falsity; (3) an intent to induce the plaintiff to act; (4) that the plaintiff reasonably relied on the truth of the statement; and (5) damages to the plaintiff as the result of their reliance. *See Antonacci v. Seyfarth Shaw, LLP*, 39 N.E.3d 225, 238 (Ill. App. Ct. 2015) (citing *Neptuno Treuhand-Und Verwaltungsgesellschaft MBH v. Arbor*, 295 Ill.App.3d 567, 571 (1998)).[5] Yusen alleges that the law firm, through O'Donnell, knowingly misrepresented the scope of legal services its attorneys would need to perform for Yusen by writing in the engagement letter that the firm would be filing pleadings, filing and responding to motions, and handling discovery in the antitrust case, as well as traveling to courts in other jurisdictions to argue motions and answer questions. *See* [7] ¶ 37. Counter-

---

[5] A district court sitting in diversity applies the substantive law of the forum state. *See, e.g.*, *Piltch v. Ford Motor Co.*, 778 F.3d 628, 631–32 (7th Cir. 2015) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

defendants contend that these are not statements of fact, but of non-actionable opinion. *See* [12] at 8.

Counter-defendants are correct that a statement of opinion generally cannot support a fraud claim. *See, e.g., Antonacci*, 39 N.E.3d at 238 (citing *Neptuno*, 295 Ill.App.3d at 572)); *Merrilees v. Merrilees*, 998 N.E.2d 147, 160 (Ill. App. Ct. 2013) (citing *Duhl v. Nash Realty, Inc.*, 102 Ill.App.3d 483, 489 (1981)). The same is true of promises or predictions about future conduct (as these are often just opinions about what will or will not occur). *See Madison Assocs. v. Bass*, 158 Ill.App.3d 526, 540 (1st Dist. 1987) (explaining that a party has no right to rely on another's conjecture (citing *Hofner v. Glen Ingram & Co.*, 140 Ill.App.3d 874 (1985))); *see also Illinois Non-Profit Risk Mgmt. Ass'n v. Human Serv. Ctr. of S. Metro-East*, 378 Ill.App.3d 713, 723 (4th Dist. 2008) (citing *Ault v. C.C. Servs., Inc.*, 232 Ill.App.3d 269, 271 (1992)). Here, the engagement letter states that the law firm will perform all services needed to maximize Yusen's recovery in the antitrust litigation. This is, in a broad sense, a promise of future conduct, but it is not a promise that Yusen claims was broken. There is no allegation that the law firm failed to satisfy its general obligation to do all that was necessary for Yusen in the pending lawsuit. Yusen instead complains that what was "necessary" was not all that O'Donnell promised it would be. This "promise" is also a statement of future conduct: it is a statement of what representing Yusen in the antitrust case will entail.[6]

---

[6] Counter-defendants argue that O'Donnell was merely reciting in the engagement letter his personal understanding of what *Yusen* had requested the law firm do to obtain a "maximum possible monetary recovery" in the case. *See* [18] at 2–3. If this was O'Donnell's intent, it is not at all clear from the face of the letter. O'Donnell wrote:

8

False promises are actionable as fraud, however, if they were made as part of a scheme to defraud. *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 570 (7th Cir. 2012) (applying Illinois law). If the Rodriguez firm knowingly overrepresented the kind of legal work it would perform for Yusen in order to persuade the latter to pay a higher fee, this kind of misrepresentation would be grievous enough to invoke the scheme-to-defraud exception. *See id.* (observing that "one particularly egregious fraudulent statement" may establish a scheme to defraud (quoting *BPI Energy Holdings, Inc. v. IEC (Montgomery), LLC*, 664 F.3d 131, 136 (7th Cir. 2011))). It is in the particular province of the attorney to know what class-action suits involve procedurally and, therefore, to know what kinds of legal services (if any) may be needed from non-class counsel in such cases. Leveraging this knowledge to engage in deceptive bargaining for a larger contingent fee is a form of fraudulent billing— and thus a breach of a lawyer's duty to his client, *see Cripe v. Leiter*, 184 Ill.2d 185, 198 (1998). Here, the bargain was presumptively fraudulent because of Yusen's preexisting relationship with the Rodriguez firm. *See Maksym v. Loesch*, 937 F.2d 1237, 1241–42 (7th Cir. 1991) (explaining that, when a lawyer enters into a bargain

---

You are requesting [the Rodriguez firm] to assist your company in obtaining the maximum possible monetary recovery for damages incurred because of the anticompetitive activities of various airlines . . . . This includes filing appearances in the courts having jurisdiction of this matter, handling discovery and objections thereto, filing an responding to motions, filing pleadings, and all other matters necessary to achieve the highest monetary recovery for Yusen . . . .

[1-1] at 17. The pronoun "this," as it is used to begin the second sentence above, is presumed to refer to the nearest reasonable antecedent, *i.e.*, the firm's "assist[ance]" in obtaining [a] maximum possible monetary recovery." In other words, the letter states that the law firm's "assistance" includes filing motions, etc.—not that Yusen's general request for legal assistance includes a more specific demand that certain activities be performed.

with an existing client, the law presumes that the transaction was a result of the attorney's self-dealing and undue influence) (applying Illinois law); *see also In re Marriage of Pagano*, 154 Ill.2d 174, 185 (1992); *Lustig v. Horn*, 315 Ill.App.3d 319, 325–26 (1st Dist. 2000).[7] The presumption may ultimately be rebutted, *see Pagano*, 154 Ill.2d at 186, but the question is one of fact, and Yusen has not pleaded itself out of court on this issue. (Yusen alleges that it did not receive independent legal advice before it signed the engagement letter, *see* [7] ¶ 21, and claims that the law firm hid from it relevant information—namely, which services the firm would *not* need to perform because class counsel would be doing so—in drafting the agreement, *see id.* ¶ 22.) To the extent Yusen alleges that it agreed to pay a larger fee because of the representations in the letter, those representations are actionable as promissory fraud.

But is this what Yusen has alleged? Yusen says that it relied on the statements in the engagement letter, and suffered damages from that reliance, "in retaining [the Rodriguez firm] and making or authorizing payments to [the firm]

---

[7] Counter-defendants argue that the presumption does not apply here, because the fee agreement (as set forth in the engagement letter) concerns payment for work only on the antitrust case, and the parties' existing relationship was unconnected to that lawsuit. *See* [18] at 7. According to Yusen, it had the Rodriguez firm on regular retainer (to address customs issues) when it signed the November 2007 engagement letter. *See* [7] ¶ 11. This is enough to suggest that, when Yusen agreed to the terms of the letter, Yusen had with the firm a preexisting attorney-client relationship such that the presumption of undue influence applies. *See Durr v. Beatty*, 142 Ill.App.3d 443, 449 (5th Dist. 1986) (emphasizing, in concluding that the parties had an attorney-client relationship when they entered a fee contract, that the attorney had previously represented the client in other matters). The presumption is triggered by an existing relationship, and the client's corresponding trust in and reliance on its counsel, even if the existing relationship concerns different legal matters than does the agreement at issue.

from the monies Yusen recovered from settlement funds that had been procured for Yusen [by] class counsel in the Antitrust Litigation." *Id.* ¶ 38. It is unclear what Yusen means by this. Yusen could not have relied on the engagement letter when retaining the firm, since, before Yusen even received the letter, a Rodriguez attorney entered an appearance for Yusen in the case—and Yusen does not allege that the appearance was entered without its consent. *See* [7] ¶¶ 15–16, 18. Perhaps the letter contained new representations not yet discussed—such as statements about the precise scope of the legal representation—and Yusen relied on those statements in agreeing to pay the 25% fee. The letter could in that case form the basis of a promissory-fraud claim (assuming, that is, that Yusen did not agree to the fee when it was first proposed at the meeting with O'Donnell in October 2007).[8] But this is not what Yusen has alleged. Fraud-based claims must be pleaded with particularity, Fed. R. Civ. P. 9(b), and Yusen has not done so here. Counter-defendants' motion to dismiss Yusen's fraudulent-misrepresentation claim is granted.

### 2. *Fraudulent Concealment*

The second part of Yusen's fraud claim is based not on the law firm's misrepresentations, but on the concealment of certain facts from its client. To plead

---

[8] Counter-defendants also argue that Yusen could not have relied on the letter because, when Yusen signed it, Yusen already knew about a settlement in the litigation. *See* [18] at 4. What the counterclaim actually says is that *O'Donnell*, not Yusen, was aware of the settlement when Yusen signed the engagement letter. *See* [7] ¶ 13; *see also id.* ¶ 22. But even assuming that Yusen also knew about it, it was only a partial settlement, involving only one of several defendants. *See id.* ¶ 12. There is no reason to assume that, when Yusen agreed to pay the firm a 25% fee, it had reason to believe the entire lawsuit was almost over and, consequently, that none of the services enumerated in the engagement letter would ever be needed.

a fraudulent-concealment claim, a counter-plaintiff must allege: (1) the counter-defendant concealed a material fact under circumstances that created a duty to speak; (2) the counter-defendant intended to induce a false belief; (3) the counter-plaintiff could not have discovered the truth through reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection, and justifiably relied upon the counter-defendant's silence as a representation that the fact did not exist; (4) the counter-plaintiff would have acted differently had they been aware of the concealed information; and (5) the counter-plaintiff's reliance resulted in damages. *Abazari v. Rosalind Franklin University of Medicine and Science*, 40 N.E.3d 264, 274 (Ill. App. Ct. 2015) (quoting *Bauer v. Giannis*, 359 Ill.App.3d 897, 902–03 (2005)). Yusen alleges that the Rodriguez firm concealed from it the following facts: that the actual scope of the firm's services was not as promised, and consisted instead of submitting and responding to inquiries about claim forms; that on December 31, 2012, the firm ceased operating as a law firm and delegated its work in the antitrust case to attorneys at another firm; and that the 25% contingent fee was unreasonable under the circumstances. *See* [7] ¶ 39; *see also id.* ¶¶ 23, 25, 27, 29, 32.

Whether a fee arrangement is "reasonable" under the circumstances is an opinion or legal conclusion, not a fact whose concealment may support a claim of fraud. Whether a firm is operating as a law firm, or whether its attorneys have delegated their work to another firm, are facts, and a third party could conceivably rely on a belief arising from the concealment of those facts. But even supposing that

Yusen relied on such a belief here, Yusen has not alleged any damages from this reliance.

Yusen alleges that, as of January 2013, the Rodriguez firm was no longer authorized to provide legal services in Illinois, so its principals went elsewhere—O'Donnell and Williams to Clark Hill PLC in Chicago, and Rodriguez and Gonzalez to firms in Washington, D.C.—to practice law. *See id.* at ¶¶ 29, 39(C). Because the Rodriguez firm could no longer provide legal services, says Yusen, the firm delegated to Clark Hill any remaining work required under the engagement agreement. *See id.* ¶¶ 32, 39(D). Counter-defendants do not disagree that, under the Illinois Rules of Professional Conduct, a lawyer may not delegate to an attorney from another firm any work for a particular client without first obtaining that client's informed consent. *See* ILL. RULES OF PROF'L CONDUCT R. 1.2(e). Nor do counter-defendants dispute that the Rodriguez firm ought to have disclosed (indeed, had a duty to disclose) to Yusen that the firm was contemplating such a delegation here. *See id.*; *see also id.* R. 1.4(a)(1) (mandating that lawyers "promptly inform the[ir] client of any decision or circumstance with respect to which the client's informed consent . . . is required"); *cf. D'Attomo v. Baumbeck*, 36 N.E.3d 892, 913 (Ill. App. Ct. 2015) (explaining that "a duty to speak arises if the [parties] are in a fiduciary . . . relationship," which "exists as a matter of law between . . . attorneys and clients") (citations omitted). But where is the injury to Yusen from the concealment of these facts?

Yusen says that the Rodriguez firm withheld the above information to deceive Yusen into paying the firm from settlements recovered in the case, which Yusen did. *See* [7] ¶¶ 39–40. However, the payments Yusen made—and thus the basis for its damages in the present action—were from the first three settlements in the antitrust litigation. The attorneys from Clark Hill worked on preparing and submitting claim forms in connection with the *fourth* settlement, and the funds from that settlement had not yet been distributed as of the counterclaim's filing. *See id.* ¶ 35; [7-C] ¶¶ 17–18. Thus, to the extent Yusen believed that the invoices it paid were invoices for fees earned by the Rodriguez firm instead of Clark Hill, this was not a false belief, and did not result in any damages.

Yusen also claims that it falsely believed the firm would perform or had performed the specific legal services outlined in the engagement letter. Instead of handling discovery and filing or responding to motions, says Yusen, the Rodriguez firm needed only to prepare and submit several claims forms (and to respond to inquiries made by the claims administrator), *see* [7] ¶ 39(A)—information that the firm knowingly withheld from Yusen beginning in October 2007, *see id.* ¶ 25 (incorporated into Count I at *id.* ¶ 36). It is not evident from the pleading, however, how exactly Yusen claims to have relied on the firm's silence. In pleading reliance here, Yusen employs the same ambiguous language addressed above with respect to the fraudulent-misrepresentation claim. *See id.* ¶ 40 (alleging that Yusen relied on its false beliefs when it "retained . . . and made or authorized payments" to the Rodriguez firm from monies recovered in the antitrust suit). What precisely Yusen

means by this statement is still unclear. To state a fraudulent-concealment claim with the requisite particularity, Yusen must explain with specificity the actions it would not have taken—and thus the injuries it would not have sustained—but for the counter-defendants' concealment. And if the concealment occurred at more than one point in time, and affected Yusen's actions differently as time progressed, the pleading must be precise about that, too. As currently drafted, the counterclaim lacks this kind of precision. Yusen's fraudulent-concealment claim does not pass muster under Rule 9(b).[9]

## B. Fiduciary Breach (Counts II and III)

To state a claim for fiduciary breach, Yusen must allege: (1) the existence of a fiduciary relationship; (2) a breach of the duties imposed by that relationship; and (3) damages from the breach. *See Kovac v. Barron*, 6 N.E.3d 819, 833 (Ill. App. Ct.

---

[9] Counter-defendants also argue that Yusen has not pleaded a proper claim for fraudulent concealment because Yusen has not alleged that it was unable to discover the truth about what the Rodriguez firm was actually doing on its behalf. *See* [18] at 9. In general, counter-plaintiffs seeking to recover on a fraudulent-concealment claim must plead justifiable reliance by alleging that they could not have discovered the truth through reasonable inquiry or inspection. *See Abazari*, 40 N.E.3d at 274 (citation omitted); *see also D'Attomo*, 36 N.E.3d at 913 (affirming dismissal of a concealment claim, in part because the plaintiffs had not included such allegations in their complaint). But a failure to inquire—or, as is more relevant here, a failure to allege that the counter-plaintiff could not have learned the truth through reasonable inquiry—is not necessarily fatal. "The question is whether, under the circumstances and in light of the information open to the plaintiff, . . . the law may properly say that the loss is his own responsibility." *Schrager v. N. Cmty. Bank*, 328 Ill.App.3d 696, 709 (1st Dist. 2002) (quoting *Chicago Title & Trust Co. v. First Arlington Nat'l Bank*, 118 Ill.App.3d 401, 409 (1983)) (internal brackets and quotation marks omitted). And a plaintiff is not responsible for its loss, for example, where it did not have the same ability as the defendant to discover the truth, or where the latter's statements have created in the plaintiff a false sense of security. *Id.* at 709–10 (quoting *Gerill Corp v. Jack L. Hargrove Builders, Inc.*, 128 Ill.2d 179, 195 (1989); *Miller v. William Chevrolet/GEO, Inc.*, 326 Ill.App.3d 642, 652 (2001)). Because the fraudulent-concealment claim is inadequate for other reasons, I do not decide at this time whether the failure to allege an inability to make a reasonable inquiry also warrants a dismissal.

2014) (citations omitted). Yusen brings two fiduciary-breach claims—one alleging breach by O'Donnell, acting on behalf of himself and "the former Rodriguez Law Firm" (Count II), and the other alleging, in the alternative, a breach by the firm (Count III). *See* [7] ¶¶ 47, 54. With Count II Yusen seeks damages from shareholders O'Donnell, Williams, Rodriguez, and Gonzales, jointly and severally. *See id.* at 58. Under Count III Yusen seeks damages from the same individuals and the firm (now known as Rodriguez O'Donnell Gonzalez & Williams, P.C.), also jointly and severally. *See id.* at 63. The claims are otherwise identical, and the parties do not distinguish between them in their briefs. (Though defendants do argue that there is a kind of "group pleading" problem, addressed below at Part C.) For simplicity, the counts (and conduct) are treated collectively.

The fiduciary-breach claims are based on much the same conduct as the conduct underlying the fraud claims. *See id.* ¶¶ 47(A)–(D), (F), (I)–(J); *id.* ¶¶ 54 (A)–(D), (F), (I)–(J). Fraudulent conduct by an attorney violates the latter's duty to act with honesty and good faith—obligations that all lawyers owe to their clients as a matter of law, *see Pippen v. Pederson & Houpt*, 986 N.E.2d 697, 704 (Ill. App. Ct. 2013) (citing *Metrick v. Chatz*, 266 Ill.App.3d 649, 656 (1994)); *see also Coughlin v. SeRine*, 154 Ill.App.3d 510, 515 (1st Dist. 1987) ("[I]t is incumbent upon the attorney that he exercise the utmost good faith and fairness in dealing with the client." (citing *Drake v. Becker*, 14 Ill.App.3d 690, 696 (1973))); *cf. Burdett v. Miller*, 957 F.2d 1375, 1381 (7th Cir. 1992) ("A fiduciary duty is the duty of an agent to treat his principal with the utmost candor, rectitude, care, loyalty, and good

faith . . . .") (citations omitted). As Yusen has not adequately pleaded injury from the frauds, however, the conduct alleged in support of those claims similarly cannot support a claim for fiduciary breach.

The absence of injury likewise renders inadequate Yusen's claim that the firm breached its fiduciary duty by demanding to be reinstated as Yusen's counsel after it was fired. According to Yusen, after it terminated its relationship with the Rodriguez firm (with respect to the antitrust litigation), the firm demanded to be brought back on as counsel. This demand, says Yusen, was part of the firm's scheme to deceive Yusen into believing that the former was still able to provide legal services. *See* [7] ¶¶ 47(H), 54(H). Yusen did not agree to the reinstatement, however, *see* [7-C] ¶¶ 37–38; and, as far as can be gleaned from the pleadings, Yusen had already made the fee payments from which it now claims financial injury by the time the discussion about reinstatement even took place, *compare* [7] ¶¶ 33–34 (alleging that Yusen paid invoices dated October 29, 2013 and April 10, 2014) *with* [7-C] ¶ 37 (agreeing that the firm sought reinstatement through a letter dated November 5, 2014). Yusen has pleaded no reliance on—and thus no damages from—this alleged deception.

Yusen also claims that the Rodriguez firm committed a fiduciary breach by obtaining through undue influence Yusen's agreement to pay the 25% contingent fee—an unreasonable fee, which Yusen ultimately did pay. *See* [7] ¶¶ 47(E), (G); *id.* ¶¶ 54(E), (G). Attorneys are prohibited from overcharging their clients, *see Cripe*, 184 Ill.2d at 198; *Coughlin*, 154 Ill.App.3d at 515, and the presumption of

17

undue influence leads me to assume, for now, that the fee Yusen agreed to and did pay was excessive in this case. (Whether the fee was actually excessive is a factual question that cannot be resolved at this stage of the litigation.) Inasmuch as Yusen bases Count II or III on the firm's exercise of undue influence to collect an unreasonably-high fee, that claim may proceed.

### C. Group Pleading

In a case with multiple counter-defendants, to comply with Rule 8 or 9(b), the counter-plaintiff generally must plead sufficient facts to notify each counter-defendant of what he or she supposedly did wrong. *See United States v. Sanford-Brown, Ltd.*, 788 F.3d 696, 705 (7th Cir. 2015) (citation omitted); *Bank of America, N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013). Counter-defendants here argue that Yusen has not satisfied this requirement as to Williams, Rodriguez, or Gonzales. *See* [12] at 7; [18] at 13. But Yusen does not contend that Williams, Rodriguez, or Gonzales is liable because he himself committed unlawful acts. Yusen instead claims that these individuals are liable by operation of Illinois Supreme Court Rule 721(d), which provides:

> Unless [a] corporation [engaged in the practice of law in Illinois] maintains minimum insurance or proof of financial responsibility in accordance with Rule 722, the articles of incorporation . . . shall provide, and in any event the shareholders of the corporation . . . shall be deemed to agree by virtue of becoming shareholders, . . . that all shareholders . . . shall be jointly and severally liable for the acts, errors, and omissions of the shareholders . . . and other employees of the corporation . . . arising out of the performance of professional services by the corporation . . . while they are shareholders . . . .

Ill. S. C. Rule 721(d). "Minimum insurance" is in turn defined as a professional-liability insurance policy for wrongful conduct, applicable to the conduct of the

corporation, its owners, or employees, in amounts set forth in the Rule. *See* Ill. S. C. Rule 722(b)(1). "Proof of financial responsibility" refers to funds specifically designated and segregated for the satisfaction of any judgments of wrongful conduct against the corporation, its owners, or employees. Ill. S. C. Rule 722(b)(3).

Yusen alleges that the Rodriguez firm, a corporation organized under Illinois statute, does not maintain minimum insurance as defined in Illinois Supreme Court Rule 722(b)(1). *See* [7] ¶¶ 2, 43, 50, 57. Accordingly, says Yusen, the firm's shareholders—which include Williams, Rodriguez, and Gonzales—are now liable under Rule 721(d) for the misdeeds of other employees or shareholders, such as O'Donnell, as set forth in the counterclaim. *See* [17] at 11–12. Counter-defendants do not argue otherwise, and the issue is waived. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver." (citing *United States v. Farris*, 532 F.3d 615, 619 (7th Cir. 2008))).

### D. Voluntary-Payment Doctrine

Counter-defendants also argue that Yusen's counterclaim is barred under the voluntary-payment doctrine. The voluntary-payment doctrine provides that, "[a]bsent fraud, coercion or mistake of fact, monies paid under a claim of right to payment but under a mistake of law are not recoverable." *Spivey v. Adaptive Mktg. LLC*, 622 F.3d 816, 822 (7th Cir. 2010) (quoting *Randazzo v. Harris Bank Palatine, N.A.*, 262 F.3d 663, 668 (7th Cir. 2001)) (applying Illinois law); *see also King v. First Capital Financial Services Corp.*, 215 Ill.2d 1, 27–31 (2005). The doctrine is a corollary to the mistake-of-law doctrine, and reflects the principle that one who

voluntarily pays another with full knowledge of the facts is not entitled to restitution. *Randazzo*, 262 F.3d at 667–68 (citations omitted).

Counter-defendants assert that the doctrine applies to Yusen's claims here, because Yusen paid the Rodriguez firm more than $478,000 "with full knowledge of what occurred prior to agreeing to those payments." [12] at 7. Even if this is true, the doctrine is inapplicable here. Voluntary payment does not bar suits based on excessive attorney fees—the gist of Yusen's surviving claim. *See Coughlin*, 154 Ill.App.3d at 515.

### E.    Statute of Limitations

Yusen's claims are subject to a two-year statute of limitations, which began to run when Yusen knew or reasonably should have known of its injuries. *See* 735 ILCS 5/13-214.3(b) (governing actions against attorneys arising out of acts or omissions in the performance of professional services).[10] The injuries of which Yusen complains here are the fees it says the Rodriguez firm collected in connection with the antitrust litigation. So when did Yusen discover, or when should it have discovered, that the fees it paid were wrongfully charged?

---

[10] Counter-defendants say that there is a five-year limitations period, *see* [12] at 6, but this is incorrect. It is true that a five-year statute of limitations generally applies to claims sounding in fraud or fiduciary breach. *See* 735 ILCS 5/13-205; *Halperin v. Halperin*, 750 F.3d 668, 669, 671 (7th Cir. 2014) (citations omitted); *Havoco of Am., Ltd. v. Sumitomo Corp. of Am.*, 971 F.2d 1332, 1337 (7th Cir. 1992) (citations omitted). However, Section 13-214.3 of the Illinois Code of Civil Procedure specifically provides that claims against attorneys, when based on the attorney's provision of legal services, is two years, not five. The more specific statute trumps the general one. *See, e.g., Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.*, 518 F.3d 459, 468 (7th Cir. 2008) (citing *Commonwealth Edison v. Walsh Constr. Co.*, 177 Ill.App.3d 373, 532 N.E.2d 346, 350 (1988)); *DeMarco v. Ecklund*, 341 Ill.App.3d 225, 227 (2d Dist. 2003) (citing *Tosado v. Miller*, 188 Ill.2d 186, 191 (1999)).

This question cannot be answered from the pleadings—nor need it be. Statute-of-limitations defenses are affirmative defenses, and thus plaintiffs and counter-plaintiffs need not anticipate or overcome them in their complaints. *See Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 928 (7th Cir. 2015) (explaining that these defenses "typically turn on facts not before the court at [the motion-to-dismiss] stage") (citations omitted). Dismissal based on a statute-of-limitations defense is proper at the pleadings stage only where the claimant has alleged facts establishing the claim's tardiness. *See id.* (citations omitted). Yusen has not done so here.[11]

---

[11] Counter-defendants argue that Yusen should have figured things out by at least February 2009, when claims to the first settlement were due. *See* [18] at 11. By that time, say counter-defendants, Yusen should have realized that what the firm had stated previously as to the scope of the representation might not be true. *See id.* But the first settlement, as discussed above at note 8, was with only one of many defendants in the case. Counter-defendants have not explained, and nor is it apparent from the pleadings, why Yusen would or should have assumed that the remaining defendants would soon settle with no actual litigating to be done in the interim.

## IV.  Conclusion

For the reasons discussed above, counter-defendants' motion to dismiss the counterclaim, [11], is granted in part and denied in part. The motion to dismiss Counts II and III is denied to the extent Yusen bases either claim on the Rodriguez firm's exercise of undue influence in extracting from Yusen an unreasonably-high fee. The motion is otherwise granted. The parts of the counterclaim that are dismissed may be cured through re-pleading, and are dismissed without prejudice.

ENTER:

Manish S. Shah
United States District Judge

Date:  2/4/16